UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
STEVEN SCHWEITZER and WILLIAM
SCOTT MERO,

                          Plaintiffs,

                -against-

JAMES E. NEVELS and THE
SWARTHMORE GROUP, INC.,

                       Defendants.
-----------------------------------------------------------------X

**22-CV-6435 (KHP)**

**OPINION & ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__4/17/2023__

**KATHARINE H. PARKER, United States Magistrate Judge:**

       Steven Schweitzer and William Scott Mero ("Plaintiffs") were former executives at The

Swarthmore Group ("Swarthmore"), a registered investment advisory firm founded by James E.

Nevels (together with Swarthmore, "Defendants").  Plaintiffs contend that their termination

from Swarthmore was a breach of their employment agreement, that Nevels made fraudulent

misrepresentations to convince them to accept offers of employment with Swarthmore and

remain at Swarthmore, that Nevels fraudulently induced Plaintiffs to accept employment and

remain at Swarthmore, and that Plaintiffs were not paid for their last pay period in a timely

manner and were not paid certain accrued benefits in violation of the Pennsylvania Wage

Payment and Collection Law ("WPCL") and the New York Labor Law ("NYLL").  Nevels moved to

dismiss the First Amended Complaint ("FAC") for failure to state a claim pursuant to Federal

Rule of Civil Procedure 12(b)(6) or, in the alternative, to stay this matter or transfer the case to

the Eastern District of Pennsylvania.  For the reasons set forth below, this action is transferred

to the Eastern District of Pennsylvania.

**BACKGROUND**

Plaintiffs, residents of New York, are individuals with over 25 years of financial and investment experience.  (FAC ¶¶ 12-13.)  Mero specializes in high-yield bonds, investment grade bonds, and asset backed securities while Schweitzer specializes in fixed income, credit analysis, and portfolio management.  (*Id.*)

Swarthmore was a registered investment advisory firm that provided financial wealth management, investment consulting services, and portfolio management for individuals, businesses, and institutional clients.  (*Id.* at ¶ 8.)  Its offices are in Pennsylvania, and it is incorporated in Delaware.  (*Id.* at ¶ 7.)  It filed for bankruptcy on August 4, 2022, in the United States Bankruptcy Court for the Eastern District of Pennsylvania (in Philadelphia).  (ECF No. 17.)  Nevels founded Swarthmore in 1991, served as Chairman and Chief Executive Officer since, and is the largest shareholder.  (FAC ¶¶ 8-9.)

In January 2021, Plaintiffs accepted an offer of employment from Nevels to work at Swarthmore.  (*Id.* at ¶ 38.)  Each entered into an employment agreement.  The employment agreements are substantially the same and are incorporated by reference into the Complaint.  (*Id*. Ex. A, B.)  The agreements specify Plaintiffs' position (Senior Fixed Income Portfolio Manager) and duties during the employment term, which began for both in January 2021 and was to continue for a period of two years unless earlier terminated.  (*Id.* at ¶¶ 2-3.)  Their employment was based in Pennsylvania, where Swarthmore was located, but they both had the option of working remotely.  (*Id.* at ¶ 2.)  Both were to receive an annual base salary of $250,000.  (*Id.* at ¶ 4.)  For each year of employment, Plaintiffs were to receive a bonus of no less than $109,000, less taxes, "to be paid at the time such bonuses are customarily paid to

similarly-situated employees but not sooner than January 1 and not later than March 31 of the calendar year following the year in which the [b]onus was earned." (*Id.* at ¶ 4(b).)  The contracts provided that on September 1, 2021 and September 1, 2022, assuming plaintiffs were still employed on such dates, Swarthmore would issue shares of common stock of the company that have a value of $126,000, subject to the terms and conditions of the Shareholders' Agreement dated June 1, 2001.  (*Id.* at ¶ 4(c).)  Additionally, the company would provide a cash payment calculated to cover any taxes associated with the equity.  (*Id.*)  The contracts also provided that Swarthmore would reimburse plaintiffs for reasonable business expenses and that they would receive twenty-five vacation days "in accordance with Company policy for executive employees."  (*Id.* at ¶ 4(e), (f).)

If Swarthmore terminated plaintiffs' employment without cause, the contracts provided for certain pay upon termination.  (FAC Ex. A, B at ¶ 5.)  Specifically, Plaintiffs were to receive other benefits payable under the terms and conditions of any applicable policies or benefit plans, including with respect to any shares of common stock, as well as severance equal to four months of Plaintiffs' base salary payable in installments over four months on the company's normal payroll dates and continued coverage under any company-sponsored health and disability plan during the severance period, to the extent that Plaintiffs otherwise qualified for post-termination coverage and subject to the same employee co-pay as in effect at the time of termination.  (*Id.* at ¶ 5(c).)  Plaintiffs understand this to mean that any accrued, unused vacation would be paid upon termination.  (FAC ¶ 309.)

The employment agreements specify that they "shall be interpreted and enforced in accordance with the laws of Pennsylvania, without regard to its conflict-of-law principles."

(FAC Ex. A, B at ¶ 13(e).)  The agreements contain an integration clause providing that the agreements constitute "the entire understanding and agreement of the Parties concerning the subject matter hereof, and it supersedes all prior negotiations, discussions, correspondence, communications understandings and agreements regarding such subject matter."  (*Id.* at ¶ 13(i).)  Plaintiffs also acknowledge and agree that they are "not relying on, and . . . may not rely on, any oral or written representation of any kind that is not set forth in writing" in the employment agreement.  (*Id.*)  Finally, the agreements provide that they may not be amended, modified or superseded except through a writing signed by all parties.  (*Id.* at ¶ 13(j).)  Plaintiffs had individual offices in Pennsylvania where Swarthmore was located but were permitted to work remotely.  (*Id.* at ¶ 2(e).)

Plaintiffs assert that after they joined the company, the situation was worse than painted by Nevels and that the company was not doing well financially or run in the way they expected.  (FAC ¶ 86.)  This led Plaintiffs to communicate to Nevels their desire to resign. Nevels then allegedly persuaded them to stay by saying he would fix various issues Plaintiffs identified, "expend new, additional, and improved resources and staff to Swarthmore," give plaintiffs managerial input and name them his successors when he left the company.  (*Id.* at ¶¶ 268-72.)  Plaintiffs contend that they relied on these representations and decided to remain with the Company.

Shortly thereafter, Nevels decided to shut down the business and terminated Plaintiffs' employment on June 30, 2022, along with the employment of all other employees.  (*Id.* at ¶¶ 201-03.)  Nevels explained the reasons for his decision were that his health was failing, and he was not able to focus on the business.  (*Id.* at ¶ 208.)  Plaintiffs did not receive severance or

health coverage during a severance period.  (*Id.* at ¶¶ 218-19.)  Plaintiffs did not receive

reimbursement for approximately $1,000 of business expenses each.  (*Id.* at ¶ 220.)  Plaintiffs

did not receive a bonus for calendar year 2022.  (FAC ¶ 221.)  Plaintiffs did not receive payment

for the value of their equity for either 2021 or for their anticipated grant of equity for 2022.  (*Id.*

at ¶¶ 222-23.)  And, Plaintiffs did not timely receive payment for the last payroll period of their

employment period.  (*Id.* at ¶ 288.)

Plaintiffs allege that Nevels is the policy-making officer and interested owner of

Swarthmore and alter-ego insofar as he was the one responsible for making all decisions as to

the hiring and firing of employees, the terms of employment contracts, the expenditure of

corporate funds, and the shut-down of the business.  (*Id.* at ¶ 224.)  Accordingly, they claim he

is an alter ego for the business and personally liable for all amounts due under their

employment contracts and under applicable wage laws.  (*Id.* at ¶¶ 180, 198, 216, 299.)

## DISCUSSION

This case is stayed against Defendant Swarthmore pursuant to the automatic stay due to

bankruptcy.  Defendant Nevels seeks dismissal of Plaintiffs' claims against him under Rule

12(b)(6).  First, he argues that he cannot be personally liable under an alter ego theory for

Swarthmore's alleged breach of their employment agreements because he is not a party to

their agreements.  He similarly argues he cannot be responsible for torts allegedly committed in

his capacity as President of Swarthmore under an alter ego theory.  He also seeks dismissal of

the fraudulent misrepresentation and inducement claims on the grounds that they are barred

by Pennsylvania's parole evidence rule, the integration clause in the employment agreements

and Pennsylvania's "gist of the action" doctrine.  He seeks dismissal of Plaintiffs' New York

Labor Law claim because the applicable contracts specify Pennsylvania law applies.  And, he seeks dismissal of the Pennsylvania wage law claim because he contends Plaintiffs received all wages to which they were entitled under Pennsylvania wage law.

In the alternative, Nevels asks the Court to either stay this action during the pendency of the bankruptcy proceeding in Pennsylvania or transfer this case to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a) where it can proceed in the same court as the bankruptcy action.

### 1.  *Order of Analysis*

"Where district courts are presented with both a motion to dismiss, under Fed. R. Civ. P. 12(b)(6), and a motion to transfer venue, under 28 U.S.C. § 1404(a), they commonly address the venue motion first, and, where transfer is appropriate, leave the motion to dismiss to be decided by the transferee court." *King v. Aramark Servs., Inc.*, 2019 WL 3428833, at *2 (W.D.N.Y. July 30, 2019) (quoting *Hart v. Crab Addison, Inc.*, 2014 WL 2865899, at *2 (W.D.N.Y. June 24, 2014)); *see also Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 413 (S.D.N.Y. 2017) (in light of the grant of defendant's motion to transfer venue, "the Court has no occasion to rule on [defendant's] motions for dismissal under Rules 12(b)(2) and 12(b)(6)", as "[t]he transferee court will be at liberty to resolve such motions or to solicit re-briefing on them"); *Havas Worldwide New York, Inc. v. Lionsgate Ent. Inc.*, 2015 WL 5710984, at *1 (S.D.N.Y. Sept. 29, 2015) (granting § 1404(a)  motion and denying Rule 12(b)(6) motion as moot); *Brown v. New York*, 947 F. Supp. 2d 317, 326 (E.D.N.Y. 2013) ("As the Court finds that transfer is appropriate, it defers decision on the Defendants' motion to dismiss for failure to state a claim to allow the transferee

court an opportunity to consider the merits of the case."). Accordingly, the Court "begins its

analysis with the venue motion." *King*, 2019 WL 3428833, at *2.

### 2.  *Motion to Transfer*

A federal civil case may be transferred to any other district where it might have been

brought in the first instance or to any other district to which all parties consent "[f]or the

convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a).

The transfer analysis thus first requires an assessment of whether the action could have been

brought in the proposed transferee court and then an assessment of whether transfer is

appropriate. *Megna v. Biocomp Labs. Inc.*, 220 F. Supp. 3d 496, 497 (S.D.N.Y. 2016). The

second step requires analysis of the following factors:  the convenience of witnesses and the

parties, the locus of operative facts, the location of relevant documents and relative ease of

access to sources of proof, the availability of process to compel the attendance of unwilling

witnesses, the court's familiarity with governing law, the relative financial means of the parties,

the weight afforded to plaintiff's choice of forum, and judicial economy and the interests of

justice*. Id.* at 498 (citation omitted). The movant bears the burden of proving by "clear and

convincing evidence" that transfer is appropriate. *N.Y. Marine & Gen. Ins. Co. v. LaFarge N.*

*Am., Inc.*, 599 F.3rd 102, 113-14 (2d Cir. 2010).

In this case, there is no dispute that this action could have been brought in the Eastern

District of Pennsylvania. Pennsylvania is where Swarthmore and Nevels are domiciled, and the

court has personal jurisdiction over both.

Turning to the multi-factor analysis, there are a number of factors that weigh in favor of

transfer. "The location of the operative events is a primary factor in determining a § 1404(a)

motion to transfer." *Smart v. Goord,* 21 F.Supp.2d 309, 316 (S.D.N.Y. 1998) (quotation and citation omitted).  A transfer to a district where the key operative events occurred serves "the interests of justice."  *Cohn v. Metro. Life Ins., Co.,* 2007 WL 1573874, at *3 (S.D.N.Y. May 31, 2007) (citation omitted).  "To determine the locus of operative facts, a court must look to the site of the events from which the claim arises."  *AVEMCO Ins. Co. v. GSV Holding Corp.,* 1997 WL 566149, at *6 (S.D.N.Y. Sept. 11, 1997) (quotation and citation omitted).

The convenience of witnesses is an important consideration in a transfer analysis, and has often been described as the single most important § 1404(a) factor.  *Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.,* 865 F.2d 513, 520 (2d Cir.1989).  "A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer."  15 C. Wright et al., § 3849 (1986).  However, a motion to transfer "should not be granted if all the transfer would accomplish is to shift the inconvenience from one party to the other."  *Guardian Life Ins. Co. of Am. v. Hernandez*, 2011 WL 3678134, at *3 (S.D.N.Y. Aug. 22, 2011) (citation omitted).  Here, Defendant Nevels argues that New York is inconvenient for him mostly due to his failing health, such that it is easier for him to litigate in Pennsylvania.  Plaintiffs do not dispute Nevels' contention that his health is poor.  In addition, other employees of Swarthmore who may be witnesses are in Pennsylvania.  New York is more convenient for Plaintiffs because they live in New York.  However, the Court notes that the train from New York to Philadelphia is approximately an hour and fifteen minutes and that Plaintiffs are already going to Philadelphia for purposes of participating in the bankruptcy action pending there.  Thus, Plaintiffs would not be substantially inconvenienced by a transfer.  Neither side has argued that trial witnesses

would be unavailable in either jurisdiction or listed specific witnesses in Pennsylvania who could not come to New York or vice versa.  On balance, the convenience of the parties and non-party witnesses factors weigh slightly in favor of transfer.  *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998) (citing *Viacom International v. Melvin Simon Productions,* 774 F.Supp. 858, 867 (S.D.N.Y.1991)) ("Courts routinely transfer cases when the principal events occurred and the principal witnesses are located in another district); *W.P.V. v. United States*, 2023 WL 1991426, at *5 (holding the convenience-of-the-parties factor favors transfer where the critical events giving rise to the plaintiffs' claims occurred in the transferee district and when "transfer would not cause substantial inconvenience to either Plaintiff").

The locus of operative facts is principally in Pennsylvania.  Plaintiffs were hired to work at Swarthmore's offices in Pennsylvania, and their contracts specify that they each have physical offices there.  The portfolios Plaintiffs managed were held by Swarthmore in Pennsylvania.  Plaintiffs' co-workers worked in Pennsylvania.  Nevels, their boss, worked in Pennsylvania.  Plaintiffs' employment contract provides for application of Pennsylvania law. Much of the conduct about which Plaintiffs complain, principally Nevels' alleged mismanagement and misrepresentations, occurred in Pennsylvania.  Similarly, Plaintiffs' employment was terminated in Pennsylvania, and the alleged breach of contract occurred in Pennsylvania from Swarthmore's offices.  While it is true that Plaintiffs, who were hired during the COVID-19 pandemic, mostly worked remotely, they were interacting with clients and managing funds through a Pennsylvania firm.  In the Court's view, the fact that Plaintiffs were permitted to work remotely may indicate there were multiple loci of operative facts but does not shift the principal locus of operative facts to New York.  *See, e.g.*, *Pence v. Gee Grp., Inc.*,

236 F. Supp. 3d 843, 855 (S.D.N.Y. 2017) (considering where the contract was negotiated or executed, where defendants performed the contract, and where alleged breach of the contract occurred to determine there were multiple loci of operative facts).  Thus, this factor weighs in favor of transfer.

The documents in this case are "located" in Pennsylvania in Swarthmore's offices, though the Court notes that they are mostly electronic.  Accordingly, this factor is not important to the analysis and is neutral.  *See Glotser v. Boardwalk Regency LLC*, 2023 WL 2162063 (S.D.N.Y. Feb. 22, 2023) (acknowledging this factor is largely neutral where documents are primarily electronic and parties do not identify specific evidence in either of the forums).  Similarly, the relative means of the parties is neutral.  That is, Plaintiffs are sophisticated businesspeople who hired lawyers to negotiate their agreements and earned substantial salaries.  Nevels is likewise a successful businessperson.

The Court's familiarity with the governing law is "one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved."  *ACE Am. Ins. Co. v. Bank of the Ozarks,* 2012 WL 3240239, at *13 (S.D.N.Y. Aug. 3, 2012) (quoting *Posven, C.A. v. Liberty Mut. Ins. Co.,* 303 F.Supp.2d 391, 405 (S.D.N.Y. 2004)).  The employment contracts at issue specify the application of Pennsylvania law and there is a Pennsylvania wage law claim.  While this Court has been called upon to apply Pennsylvania law in other cases, the Pennsylvania court is "at home" with the law.  Thus, this factor weighs slightly in favor of transfer here.  *Glotser*, 2023 WL 2162063, at * 6-7.

The public interest factors the Court considers in analyzing whether transfer is appropriate include the administrative difficulties flowing from court congestion, local interest

in having localized controversies decided at home, and the interest in having the trial of a diversity case in a forum that is at home with the law.  *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 n.6 (2013).

The Eastern District of Pennsylvania and the Southern District of New York are both busy districts.  This factor is neutral.  However, as noted above, this case involves a Pennsylvania company that filed for bankruptcy in Pennsylvania and that terminated the employment of all its employees (including Plaintiffs) in Pennsylvania.  Although Plaintiffs were permitted to work remotely, their individual officers were in Pennsylvania and, as such, it is appropriate to find that Pennsylvania has a local interest in a controversy involving how a Pennsylvania company treated Pennsylvania-based employees.

While the Court acknowledges that Plaintiff's choice of forum is entitled to considerable weight, *Berman v. Informix Corp.*, 30 F. Supp.2d 653, 659 (S.D.N.Y. 1998), and does give it weight, it nevertheless finds that, on balance, the factors discussed above tip in favor of transfer and that Defendant has met its burden of showing that transfer is appropriate.  *See Glotser*, 2023 WL 2162063, *7.

For the above reasons, the motion to transfer is GRANTED.  In light of this holding, the Court does not address the remaining arguments in the parties' briefs.

**CONCLUSION**

For the reasons set forth above, the motion to transfer is GRANTED.  The Clerk of Court is respectfully requested to transfer this action to the Eastern District of Pennsylvania.

**SO ORDERED.**

Dated: April 17, 2023
        New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge